## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARMAINE KLATCH-MAYNARD and WILLIAM MAYNARD, | : : : | CIVIL NO. 3:06-CV-845 |
| Plaintiffs, | : : | (Judge Munley) |
| v. | : : | (Magistrate Judge Carlson) |
| SUGARLOAF TOWNSHIP, et al., | : : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

"[T]he right of the people . . . to petition . . . for the redress of grievances," is one of the core, fundamental rights guaranteed to all by the United States Constitution. U.S. Const., Amend I. When it comes to turning to the courts and elsewhere to petition for the redress of their own grievances, the Plaintiffs Charmaine Klatch-Maynard and Williams Maynard, are zealous advocates of this basic civil liberty, frequently litigating claims in state and federal courts, and before various state, local and municipal agencies and bodies.  Yet when others assert this same civil liberty, and turn to the courts petitioning for redress of grievances from the Maynards, the Plaintiffs apparently take a far dimmer view of this basic constitutional guarantee, as evidenced by the instant lawsuit.

This case comes before the Court on various motions to dismiss an amended complaint filed by the Plaintiffs in this longstanding civil lawsuit. That amended complaint attempts to assert that the exercise of the right to petition for redress of grievances by the Defendants is itself of violation of the Plaintiffs' civil rights. Specifically, the Plaintiffs bring a civil rights action against these Defendants, claiming in their amended complaint that the Defendants' decision to appeal a favorable tax assessment decision made in favor of the Maynards to the state courts violated the Plaintiffs' constitutional rights.

We take a different view. We believe, consistent with the First Amendment, that all persons have a right to petition the courts for the redress of grievances, and that the exercise of this right by the Defendants cannot properly form the basis of a federal civil rights on the facts of this case.

## I.  <u>Statement of Facts and of the Case.</u>

The well-pleaded facts in this civil rights case reveal a longstanding course of litigation and acrimonious relations between the Plaintiffs and various local governmental bodies. Between 2004 and 2008, The Plaintiffs, Charmaine Klatch-Maynard and William Maynard, were residents of Sugarloaf Township, who owned property within the Hazleton School District. ( Doc. 56.) The Maynards were also embroiled in litigation with Sugarloaf Township, having filed a federal lawsuit against

the township relating to zoning matters. (Id., ¶¶27, 28.) According to the Plaintiff, this lawsuit ended unsuccessfully for the Maynards "after the jury found that Plaintiffs had less of an argument than required to award damages." (Id., ¶35.)

At the same time that this litigation was pending, the Maynards also had apparently accrued unpaid and delinquent real estate taxes owed both to the township and to the Hazleton School District. (Id., ¶¶ 28-32, and 35.) As part of their active exercise of their right to petition for redress of grievances, the Maynards launched a twofold approach to litigating these unpaid tax claims.

First, in the Autumn of 2005 the Maynards pursued a successful appeal of their real estate assessment before the Luzerne County Board of Assessment Appeals. (Id., ¶¶ 22-24 and 31.) When this assessment appeal initially resulted in a reduction of the assessed value of their real estate, (id., ¶31), the Maynards then embarked on another exercise of their right to petition. Specifically, the Plaintiffs contacted the Hazleton School District, advising the District of their successful assessment appeal and asked the District to forgive their tax delinquencies in light of this successful appeal. (Id., ¶ 30.)

The Plaintiffs' complaint then alleges that their vigorous petitioning activity inspired the school district, through its counsel, to exercise its own right to petition for redress of grievances by going to court and challenging the revised real estate

assessment that the Maynards had received from the Luzerne County Board of Assessment Appeals. (Id., ¶¶ 32-53.) Specifically, the Plaintiffs assert that between the Fall of 2005 and the Summer of 2006, Defendant James Schneider, the solicitor for Sugarloaf Township, and Defendant Edward McNelis, the attorney for the Hazleton School District, exchanged a series of communications concerning the Maynards, their various real estate tax delinquencies, their effort to reduce their real estate tax assessments, and their requests to have their tax delinquencies forgiven. (Id.) In these communications, the attorneys are alleged to have discussed whether to appeal this lowered real estate assessment decision to the Court of Common Pleas. (Id.)

The attorneys also allegedly discussed another financial matter relating both to the legal petitioning activities of the Maynards and to their ability to pay the back taxes they owed. (Id.) The Plaintiffs' complaint asserts that, in the context of these discussions, attorneys Schneider and McNelis referred to a report that the Maynards had successfully settled yet another, unrelated, civil lawsuit for $50,000, thus providing them the means of paying their tax debts. (Id.) On the basis of a speculative assertion that this information was disclosed by an attorney who formerly represented them, George Hludzik, the Plaintiffs name Hludzik and his law firm as additional

Defendants in this matter. (Id.) Ultimately, Hazleton School District appealed this assessment decision to the state court. (Id.)[1]

While the Defendants weighed their options regarding whether to petition the state court to redress their grievances concerning this real estate reassessment, the Plaintiffs were vigorous in re-asserting their right to petition by filing a new lawsuit in federal court in April 2006. (Doc. 1.) In its original form, the Maynards' 2006 federal civil rights lawsuit alleged, among other claims, violations of the Plaintiffs' First Amendment rights to petition township officials by attending and speaking out at various township meetings. Indeed, the Maynards alleged that their right of access to these public meetings was impeded, curtailed and chilled in a variety of ways on as many as 48 occasions between 2004 and 2006. (Id.)

In October of 2008, the Plaintiffs then sought leave to amend their complaint, to assert new claims against additional Defendants. (Doc. 48.) After almost ten months of contentious litigation, the Plaintiffs filed an amended complaint in August of 2009. (Doc. 56.) This amended complaint is an 81-page document, containing 301 paragraphs of factual averments, and describes 22 separate causes of action. (Id.) The

---

[1]The amended complaint does not clearly describe the outcome of this litigation or even clearly state whether the litigation has concluded, but we find that the outcome of this state case does not affect our resolution of this matter since the availability of <u>Noerr-Pennington</u> immunity does not turn on a litigant's success in petitioning..

first fifteen counts of the amended complaint appear to relate to the original lawsuit brought by the Plaintiffs. The remaining seven counts–Counts 16 though 22– bring a series of new causes of action, all of which appear in some fashion to stem out of the legal efforts by Hazleton School District to challenge the Maynards' favorable real estate reassessment decision by the Luzerne County Board of Assessment Appeals in state court. (Id.) The amended complaint thus names the Hazleton School District, its counsel, Mr. McNelis, and his law firm, Sugarloaf Township, its counsel, Mr. Schneider, and his law firm, as well as the Maynards' own former attorney, Mr. Hludzik, and his law firm as Defendants in these new counts.

According to the amended complaint, the actions of these Defendants in petitioning the state court to review this real estate reassessment: (1) violated the Plaintiffs' Fourteenth Amendment substantive due process rights under 42 U.S.C. § 1983 by depriving the Plaintiffs of property (Count 16); (2) constituted a violation of the equal protections clauses of the United States and Pennsylvania constitutions (Count 17); (3) amounted to a conspiracy to deprive the Plaintiffs of their federally protected civil rights in violation of 42 U.S.C. §1985(3)(Count 18); (4) violated Pennsylvania state law, specifically a state criminal statute 18 Pa.C.S. §5101 (Count 19); (5) constituted a civil racketeering conspiracy in violation of the federal Racketeer Influenced Corrupt Organizations (RICO) Act, 18 U.S.C. §1962, and

Pennsylvania's anti-racketeering statute, 18 Pa. C.S. §911 (Count 20); and (6) violated Pennsylvania's wrongful use of civil proceedings statute, 42 Pa.C.S. § 8351 (Counts 21 and 22).

In response to these new allegations, the following Defendants have filed motions to dismiss these counts of the Plaintiffs' amended complaint: Defendants Hludzik and the Hludzik law office, (Doc. 59); Defendants McNelis and the McNelis law office (Doc. 74); and the Defendant Hazleton School District. (Doc. 78.) These motions to dismiss present an overarching threshold objection to the Plaintiffs' legal premise that seeking to redress grievances in court by initiating litigation constitutes a civil rights violations. (Id.) In addition to this broad defense to liability, the Defendants raise an array of more specific legal objections to the various claims and causes of action propounded by the Maynards in their amended complaint.

These motions have been fully briefed by the parties. (Docs. 63, 71, 76, 81, 82, 83, 90, 91,92, and 93.) The motions have been referred to the undersigned for consideration (Doc. 96), and are, therefore, ripe for resolution.

For the reasons set forth below, it is recommended that the motions to dismiss be granted.

## II.     Discussion

### A.     Rule 12(b)(6)– The Legal Standard

The Defendants have filed motions to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (12007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d

1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather,

in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In our view, these heightened pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the complaint, and when examining whether a complaint states a viable cause of action.

10

**B.** **The Noerr-Pennington Doctrine Precludes The Plaintiffs From Bringing a Civil Rights Action Against the Defendants Based Upon Their Constitutionally-Protected Conduct of Petitioning the Courts**

At the outset, in their motion to dismiss the Defendants attack the legal premise underlying the Plaintiffs' amended complaint; namely, the Maynards' assertion that the Defendants' act of turning to the courts to seek judicial review of a real estate reassessment in some fashion constitutes an actionable constitutional tort. Citing the Noerr-Pennington doctrine, a long-standing, judicially-crafted, immunity from lawsuit for those who engage in activity petitioning the government for redress of grievances, the Defendants insist that their conduct in litigating this real estate reassessment matter was classically the type of behavior which is cloaked in immunity.

We agree. The Noerr-Pennington doctrine is a settled tenet of federal law which was originally derived more than fifty years ago from the seminal Supreme Court cases Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961) and United Mine Workers v. Pennington, 381 U.S. 657 (1965). As first framed by the Supreme Court, the Noerr-Pennington doctrine was a rule, applicable in anti-trust cases, which held that "an individual is immune from liability for exercising his or her First Amendment right to petition the government." Barnes Foundation v. Township of Lower Merion, 242 F.3d 151, 159 (3d Cir. 2001).

While the Supreme Court's rulings in <u>Noerr</u> and <u>Pennington</u> were grounded, in part, upon its interpretation of the reach of the Sherman Anti-trust Act, the Court acknowledged that premising civil liability upon petitioning activity was also antithetical to one of the fundamental freedoms granted to all by our Constitution. Thus:

> The Court recognized that the "right of petition is one of the freedoms protected by the Bill of Rights, and we cannot, of course, lightly impute to Congress an intent to invade these freedoms." <u>Noerr</u>, 365 U.S. at 138. The Court held that there was immunity regardless of the defendants' motivations in waging their campaigns, as it recognized that the right of individuals to petition the government "cannot properly be made to depend on their intent in doing so." <u>Id</u>. at 139.

<u>Barnes Foundation v. Township of Lower Merion</u>, <u>supra</u>, 242 F.3d at 159.

Given the basic constitutional precepts which informed and animated this doctrine, courts have now expanded <u>Noerr-Pennington</u> immunity far beyond the narrow confines of anti-trust litigation. Thus, in its current form, the doctrine provides immunity from a wide array of liability for those whose conduct consists solely of petitioning activity, including immunity for Defendants like those here who are sued in civil rights cases brought under 42 U.S.C. §1983 based upon their involvement in petitioning conduct. <u>See, e.g.</u>, <u>Barnes Foundation v. Township of Lower Merion</u>, 242 F.3d 151, 159 (3d Cir. 2001); <u>Taliaferro v. Darby Township Zoning Board</u>, No. 03-3554, 2008 WL 2078992 (E.D. Pa. May 15, 2008); <u>Schneck v. Saucon Valley School</u>

*District*, 340 F.Supp.2d 558 (E.D. Pa. 2004); *Pellegrino Food Products Co. v City of Warren*, 136 F.Supp.2d 391 (W.D. Pa. 2000). Moreover, the immunity conferred by the *Noerr-Pennington* doctrine embraces all forms of government petitioning, and expressly reaches the petitioning activity of filing, pursuing and participating in a civil lawsuit. Thus "[a]s a general matter, . . ., the filing of a lawsuit is itself petitioning conduct protected by the First Amendment and may not be the basis for liability under the *Noerr-Pennington* doctrine. *See* *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127(1961)('*Noerr*'); *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965) ('*Pennington*' ); *Herr v. Pequea Twp.*, 274 F.3d 109, 116 (3d Cir.2001)." *Schneck v. Saucon Valley School District, supra*, 340 F.Supp.2d at 572 -573. *See* *King v. Township of East Lampeter*, 17 F.Supp.2d 394 (E.D. Pa. 1998)(witness in state lawsuit entitled to *Noerr-Pennington* immunity in subsequent federal civil rights action).

Furthermore, *Noerr-Pennington* immunity extends to all individuals who engage in petitioning activity, like litigation, regardless of their official station and status. Therefore, public officials and other government actors like the Hazleton School District may assert the *Noerr-Pennington* doctrine as a defense to civil liability for actions involving petitioning conduct. *Mariana v. Fisher*, 338 F.3d 189 (3d Cir. 2003)(*Noerr-Pennington* doctrine applies to public officials);  *Schneck v. Saucon*

<u>Valley School District</u>, 340 F.Supp.2d 558 (E.D. Pa. 2004)(school district may invoke <u>Noerr-Pennington</u> doctrine with respect to litigation decision appealing adverse arbitrator's decision); <u>Congregation Anshei Roosevelt v. Panning and Zoning Board of Borough of Roosevelt</u>, No. 07-4109, 2008 WL 4003483 (D.N.J. Aug. 21, 2008)(Government actors entitled to <u>Noerr-Pennington</u> immunity).

The <u>Noerr-Pennington</u> doctrine also recognizes that petitioning activity is often inspired by many, varied, far reaching and divergent motivations. Therefore, typically <u>Noerr-Pennington</u> "immunity [is conferred] regardless of the defendants' motivations in waging their campaigns, as it recognized that the right of individuals to petition the government 'cannot properly be made to depend on their intent in doing so.' " <u>Barnes Foundation v. Township of Lower Merion</u>, <u>supra</u>, 242 F.3d at 159 (citations omitted). In short, "[t]he <u>Noerr-Pennington</u> doctrine immunizes the petitioning party regardless of that party's motive or purpose." <u>Taliaferro v. Darby Tp. Zoning Bd, supra</u>, 2008 WL 2078992, * 7(citations omitted). <u>See</u> <u>King v. Township of East Lampeter</u>, 17 F.Supp.2d 394, 412 (E.D. Pa. 1998)(a defendant's motive is irrelevant under the <u>Noerr-Pennington</u> doctrine: "As long as there is petitioning activity, the motivation behind the activity is unimportant.")

Nor can a plaintiff defeat a claim of immunity for petitioning activity under the <u>Noerr-Pennington</u> doctrine by merely insisting that the defendants conspired, or

agreed with others, to engage in this activity. It is well-settled that there is no "conspiracy exception" to the Noerr-Pennington doctrine. City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365 (1991). Rather, the only recognized exception to this broad immunity conferred upon those engaged in petitioning activity is what is referred to as the "sham" exception. This exception, while universally recognized, is narrowly construed:

> The "sham" exception to Noerr [only] encompasses situations in which persons use the governmental *process*-as opposed to the *outcome* of that process-as a .... weapon. . . . . A "sham" situation involves a defendant whose activities are "not genuinely aimed at procuring favorable government action" at all, Allied Tube & Conduit Corp. v. Indian Head, Inc., 486 U.S. 492, 500, n. 4 (1988), not one "who 'genuinely seeks to achieve his governmental result, but does so *through improper means,*'" id., at 508, n. 10 (quoting Sessions Tank Liners, Inc. v. Joor Mfg., Inc., 827 F.2d 458, 465, n. 5 (CA9 1987)).

City of Columbia v. Omni Outdoor Advertising, Inc., supra, 499 U.S. at 380.

Because the Noerr-Pennington doctrine promotes important constitutional values favoring the public's right to petition for redress of grievances, a plaintiff who seeks to defeat an immunity claim premised on Noerr-Pennington under the "sham" litigation exception must make a demanding showing and meet an exacting:

> [T]wo-part definition of "sham" litigation. First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under Noerr, and an antitrust claim

premised on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of [this] definition of sham, the court should focus on whether the baseless lawsuit conceals "an attempt to interfere *directly* with [the plaintiff]," Noerr, supra, 365 U.S., at 144 (emphasis added), through the "use [of] the governmental *process*-as opposed to the *outcome* of that process-as a . . . weapon," Omni, 499 U.S., at 380 (emphasis in original).

Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49, 60-61 (1993).

Thus, at bottom, the sham exception applies only when it can be shown that a defendant "is simply using the petition process as a means of harassment." King v. Township of East Lampeter, 17 F.Supp.2d 394, 413 (E.D. Pa. 1998). In contrast, if the defendant is actually attempting to achieve the goal of the litigation or petitioning activity it cannot be said that the activity is a mere sham, and this narrow exception to Noerr-Pennington immunity does not apply. Adopting this exacting test, courts have frequently rebuffed efforts by civil rights plaintiffs to deny Noerr-Pennington immunity to defendants whose activities have been limited to petitioning activity, rejecting claims that the defendants' litigation or petitioning conduct was a mere sham. See, e.g., Schneck v. Saucon Valley School District, 340 F.Supp.2d 558 (E.D. Pa. 2004); Pellegrino Food Products Co. v City of Warren, 136 F.Supp.2d 391 (W.D. Pa. 2000); King v. Township of East Lampeter, 17 F.Supp.2d 394, 413 (E.D. Pa. 1998).

In this case we find that the Defendants are entitled to <u>Noerr-Pennington</u> immunity on all of the Plaintiffs' civil rights claims which are premised upon petitioning activity, the filing of a legal action challenging the Maynards' real estate reassessment. Indeed, all of the requisites for <u>Noerr-Pennington</u> immunity are fully satisfied here. At the outset, this immunity is plainly applicable to federal civil rights claims like those made here. <u>See, e.g.</u>, <u>Barnes Foundation v. Township of Lower Merion</u>, 242 F.3d 151, 159 (3d Cir. 2001); <u>Taliaferro v. Darby Township Zoning Board</u>, No. 03-3554, 2008 WL 2078992 (E.D. Pa. May 15, 2008); <u>Schneck v. Saucon Valley School District</u>, 340 F.Supp.2d 558 (E.D. Pa. 2004); <u>Pellegrino Food Products Co. v City of Warren</u>, 136 F.Supp.2d 391 (W.D. Pa. 2000) Moreover, these Defendants, private litigants and public actors, are clearly entitled to invoke this immunity. <u>Mariana v. Fisher</u>, 338 F.3d 189 (3d Cir. 2003)(<u>Noerr-Pennington</u> doctrine applies to public officials); <u>Schneck v. Saucon Valley School District</u>, 340 F.Supp.2d 558 (E.D. Pa. 2004)(school district may invoke <u>Noerr-Pennington</u> doctrine with respect to litigation decision appealing adverse arbitrator's decision); <u>Congregation Anshei Roosevelt v. Panning and Zoning Board of Borough of Roosevelt</u>, No. 07-4109, 2008 WL 4003483 (D.N.J. Aug. 21, 2008)(Government actors entitled to <u>Noerr-Pennington</u> immunity) Furthermore, the actions of the Defendants in instituting litigation are undeniably the type of petitioning activity protected under the <u>Noerr-</u>

<u>Pennington</u> doctrine. <u>Schneck v. Saucon Valley School District, supra</u>, 340 F.Supp.2d at 572 -573.

The Maynards may not defeat this <u>Noerr-Pennington</u> immunity by claiming that this conduct falls within the "sham" exception to this doctrine. As we have noted:

> The "sham" exception to <u>Noerr</u> [only] encompasses situations in which persons use the governmental *process*-as opposed to the *outcome* of that process-as a .... weapon. . . . . A "sham" situation involves a defendant whose activities are "not genuinely aimed at procuring favorable government action" at all, <u>Allied Tube & Conduit Corp. v. Indian Head, Inc</u>., 486 U.S. 492, 500, n. 4 (1988), not one "who 'genuinely seeks to achieve his governmental result, but does so *through improper means,*'" id., at 508, n. 10 (quoting <u>Sessions Tank Liners, Inc. v. Joor Mfg., Inc</u>., 827 F.2d 458, 465, n. 5 (CA9 1987)).

<u>City of Columbia v. Omni Outdoor Advertising, Inc., supra,</u> 499 U.S. at 380(emphasis in original). In this case, it is beyond dispute that the Defendants were actually trying to achieve the results sought in their litigation when they brought this action challenging the Plaintiffs' real estate reassessment. The Defendants genuinely intended to secure a revised assessment which placed a greater tax liability on the Plaintiffs. Indeed, Count 16 of the Plaintiffs' amended complaint, which alleges that the Defendants endeavored to deprive the Maynards of this favorable real estate assessment, is expressly premised upon the notion that the Defendants were sincerely committed to achieving the goals of this litigation. Since the "sham" exception to the <u>Noerr-Pennington</u> doctrine only "encompasses situations in which persons use the governmental *process*-as opposed to the *outcome* of that process-as a .... weapon,"

City of Columbia v. Omni Outdoor Advertising, Inc., supra, 499 U.S. at 380(emphasis in original), this concession by the Plaintiffs that the Defendants' goal was a favorable outcome to its litigation is fatal to any effort to characterize this litigation as a mere sham.

In sum, the Defendants' activities fall squarely within the ambit of the type of petitioning conduct which is protected under the Noerr-Pennington doctrine, and the Plaintiffs cannot show that this activity falls within the narrowly defined "sham" exception to this doctrine, since the Plaintiffs concede that the Defendants were actually attempting to achieve the outcome they sought in their litigation. Therefore, since the Defendants, like the Plaintiffs, have a First Amendment right "to petition . . . for the redress of grievances", the Defendants are entitled to invoke the Noerr-Pennington doctrine and its immunity for petitioning activity as a legal defense to the federal claims set forth in Counts 16 through 22 of this amended complaint, and those claims should be dismissed.

### C. Entirely Aside from Noerr-Pennington Immunity, a Number of the Plaintiffs' Federal Claims Fail on Other Grounds

Entirely aside from this threshold obstacle of Noerr-Pennington immunity, the federal causes of action set forth in the Plaintiffs' amended complaint fail for a number of other reasons. These other fatal defects in the Maynards' federal claims are discussed separately below:

## 1. **The Plaintiffs Have Failed to Adequately Plead a Civil RICO Cause of Action**

In Count 20 of their amended complaint the Maynards make an extremely grave charge in an exceedingly vague fashion. (Doc. 48, ¶¶255-268. ) In this count the Plaintiffs claim that the Defendants' efforts to use the courts to review the Maynards' real estate assessment actually constituted a criminal pattern of racketeering activity involving mail and wire fraud in violation of the federal Racketeer Influenced Corrupt Organizations (RICO) Act, 18 U.S.C. §1962.

Yet, beyond labeling this activity as criminally corrupt in some fashion, the Plaintiffs' amended complaint is devoid of any well-pleaded factual allegations which would support these serious claims. Thus, the Plaintiffs fail to explain how letters between lawyers regarding the filing of a lawsuit can constitute violations of the federal mail fraud statute. Nor do the Plaintiffs provide any description of the allegedly fraudulent representations which they contend were made here. Furthermore, beyond labeling the Defendants' conduct as an attempt to collect an unlawful debt, the Plaintiffs do not allege any facts which would support an inference that the commonplace act of filing a case in state court somehow masks a criminal pattern of racketeering activity.

These deficiencies in the Plaintiffs' complaint are particularly glaring since the rules governing specificity of pleading in federal court apply with particular force to

the Maynards' civil RICO claim. With respect to civil RICO claims involving allegations of fraud, the level of pleading specificity required in a complaint is clear. As the United States Court of Appeals for the Third Circuit has observed:

> In order to plead a [civil] violation of RICO, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. A pattern of racketeering activity requires at least two predicate acts of racketeering. *See* 18 U.S.C. § 1961(5). These predicate acts of racketeering may include, *inter alia,* federal mail fraud under 18 U.S.C. § 1341 or federal wire fraud under 18 U.S.C. § 1343. *See* 18 U.S.C. § 1961(1). The federal mail and wire fraud statutes prohibit the use of the mail or interstate wires for purposes of carrying out any scheme or artifice to defraud. *See* 18 U.S.C. §§ 1341, 1343. " 'A scheme or artifice to defraud need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension.' " Where, . . ., plaintiffs rely on mail and wire fraud as a basis for a RICO violation, the allegations of fraud must comply with Federal Rule of Civil Procedure 9(b), which requires that allegations of fraud be pled with specificity. In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.". Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation.*

Lum v. Bank of America, 361 F.3d 217, 223-24 (3d Cir. 2004)(citations omitted, emphasis added).

Thus, "[p]ursuant to Rule 9(b), a plaintiff averring a claim in fraud must specify ' "the who, what, when, where, and how: the first paragraph of any newspaper story." '"

Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir.1999) (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.1990)). 'Although Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time, plaintiffs must use "alternative means of injecting precision and some measure of substantiation into their allegations of fraud."' In re Rockefeller Ctr. Props. Secs. Litig., 311 F.3d 198, 216 (3d Cir.2002) (quoting In re Nice Sys., Ltd. Secs. Litig., 135 F.Supp.2d 551, 577 (D.N.J.2001), emphasis supplied)." Animal Science Products, Inc. v. China Nat. Metals & Minerals Import & Export Corp., 596 F.Supp.2d 842, 878 (D.N.J.,2008).

In this case, Count 20 of the Maynards' amended complaint–which simply labels without any factual support the filing of this civil action in state court as a pattern of fraudulent racketeering activity–plainly does not meet the pleading standards required under Rule 9 for civil RICO claims. In fact, at present, without the inclusion of some further well-pleaded factual allegations, this count of the amended complaint contains little more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which as a legal matter] do not suffice." Ashcroft v. Iqbal, supra 127 S.Ct. at 1979

Thus, aside from the Defendants' Noerr-Pennington immunity, the Maynards have failed to allege any facts which would give rise to a plausible claim for relief under the federal RICO statute with the specificity of pleading required by Rule 9.

Therefore, it is recommended that the civil RICO count in the amended complaint be dismissed without further leave to amend.

## 2. The Plaintiffs have Failed to Allege a Viable Substantive Due Process Claim

Similarly, to the extent that the Plaintiffs' amended complaint alleges that the Defendants' action in turning to the state courts to adjudicate a contested real estate assessment rise to the level of a substantive due process violation, (Doc. 48, Count 16), the amended complaint fails to state a cause of action upon which relief can be granted. In a property tax assessment, local land use setting such substantive due process claims are judged against a precise, and exacting standard:

> In order to establish a viable substantive due process claim in the context of municipal land-use decisions, a plaintiff must show: (1) a fundamental property interest protected by the Fourteenth Amendment; and (2) that the deprivation alleged resulted from government action that "may fairly be said to shock the contemporary conscience." Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 426-27 (3d Cir.2003). It is undisputed that the Plaintiff's ownership of real property satisfies the first element. See DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell, 53 F.3d 592, 600 (3d Cir.1995) abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392 (3d Cir.2003) (recognizing that "ownership is a property interest worthy of substantive due process protection"). The Court turns, therefore, to the second element. The "shocks the conscience test" in land use cases was addressed by the Supreme in Sacramento v. Lewis, 523 U.S. 833 (1998). There, the Court wrote that the "criteria used to identify what is fatally arbitrary differ depending on whether [a legislative act] or a specific act of a government officer is at issue." Id. at 846. Cases "dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct [is] 'arbitrary in the constitutional sense.' " Id.

( quoting Collins v. Harker Heights, 503 U.S. 115, 129 (1992)). "[T]he cognizable level of executive abuse of power [is] that which shocks the conscience." *Id.* "While the measure of what is conscience shocking is no calibrated yard stick, it does ... 'poin[t] the way.' " *Id.* at 847 ( quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973)).

Southersby Development Corp. v. Borough of Jefferson Hills, N0. 09-208, 2010 WL 1576465, *2 -3 (W.D.Pa. April 20, 2010).

Moreover, when examining substantive due process claims, like those made by the Maynards, which arise in the context of property assessment disputes, it is agreed "that 'whether a [government] official's actions or inactions violate due process is determined by utilizing a "shocks the conscience" test.' Eichenlaub, 385 F.3d at 285 ( citing United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 399 (3d Cir.2003)). Although the test is imprecise, it is clearly 'designed to avoid converting federal courts into super zoning tribunals' Id. Consequently, what 'shocks the conscience' is 'only the most egregious official conduct' Id. (quotation omitted). Mere evidence of 'improper motives' is insufficient. Id. at 286 n. 9." Locust Valley Golf Club, Inc. v. Upper Saucon Tp., No. 08-3569, 2010 WL 3096158, *3 (3d Cir. Aug. 9, 2010). Applying this standard, the United States Court of Appeals for the Third Circuit has held that tax assessment decisions do not violate substantive due process unless they are shocking, egregious, or motivated by some form of improper self-dealing. Eichenlaub v. Township of Indiana, 385 F.3d. 274, 285-86 (3d Cir. 2004).

In this case, the allegations set forth in the Maynards' amended complaint fail to describe conduct which "shocks the conscience" and is as a matter of law "egregious." Rather, the amended complaint simply asserts that when a local taxing body learned that tax delinquents had obtained a reduction in their tax assessment and were now seeking tax forgiveness based upon that reduced assessment, they resolved to ask a court to review that tax reassessment decision. Seeking judicial review of this reassessment was entirely lawful, and the decision by local officials to turn to the courts to address a dispute was neither shocking nor egregious. Therefore, this course of conduct does not support a substantive due process claim and the substantive due process cause of action set forth in the Plaintiffs' amended complaint should be dismissed.

### 3. The Plaintiffs' Class-of-One Equal Protection Claim is Also Unavailing

The same flaws which undermine the Plaintiffs' substantive due process claim call for dismissal of the Plaintiffs' equal protection claim. (Doc. 48, Count 17.) Fairly construed, this equal protection claim advances what is called a "class of one" claim, an assertion that the Plaintiffs have been treated differently than all others in some invidious fashion. The legal standard to be applied when examining such a claim in the context of a land use, property tax assessment dispute has been defined by the United States Court of Appeals for the Third Circuit in the following terms:

The Supreme Court has held that a " 'class of one' " can attack intentionally different treatment if it is " 'irrational and wholly arbitrary.' " <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000) (internal citations omitted) (per curiam). . . . The "irrational and wholly arbitrary" standard is doubtless difficult for a plaintiff to meet in a zoning dispute, <u>id</u>. at 565-66 (Breyer, J., concurring), and we do not view an equal protection claim as a device to dilute the stringent requirements needed to show a substantive due process violation. [Therefore][i]t may be very unlikely that a claim that fails the substantive due process test will survive under an equal protection approach

<u>Eichenlaub v. Township of Indiana, supra</u>, 385 F.3d at 286-87.

This case aptly illustrates why it is "very unlikely that a claim that fails the substantive due process test will survive under an equal protection approach." <u>Id</u>. Indeed, the same considerations that led us to conclude that the actions of the Defendants in turning to the courts to review the Plaintiffs' real estate tax assessment did not shock the conscience, also lead us to conclude that those actions are not " 'irrational and wholly arbitrary,' " <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000), the legal benchmark which defines a valid equal protection claim in this context.

Far from being irrational and wholly arbitrary, the decision to seek judicial review of the real estate tax reassessment of these tax delinquents who had obtained a reduction in their tax assessment and were now seeking tax forgiveness based upon that reduced assessment seems a reasonable and prudent course for local taxing officials to follow. Such a course adhered to the rule of law, and selected the Plaintiffs

26

for this litigation based upon entirely rational criteria; namely, their tax delinquencies, coupled with their efforts to reduce their tax assessment and seek tax forgiveness based upon that reduced assessment. Since the conduct alleged here is neither irrational nor wholly arbitrary, the Plaintiffs' equal protection claim, like their substantive due process claim, fails.

4. **Consistent With the Noerr-Pennington Doctrine, a Civil Rights Conspiracy Claim Cannot be Premised Upon Lawful Petitioning Activity, the Filing of a State Lawsuit**

The Plaintiffs' civil rights conspiracy claim (Doc. 48, Count 18) likewise also fails as a matter of law. That claim is largely premised upon allegations that several lawyers at various time discussed doing what lawyers do, engage in litigation. These allegations, standing alone, fail to state a constitutional claim for several reasons.

First, as we have noted, conducting litigation is the type of petitioning activity that is plainly encompassed by the Noerr-Pennington doctrine. Schneck v. Saucon Valley School District, supra, 340 F.Supp.2d at 572 -573. See King v. Township of East Lampeter, 17 F.Supp.2d 394 (E.D. Pa. 1998). Since there is no "conspiracy exception" to the Noerr-Pennington doctrine, City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365 (1991), a complaint which merely alleges that lawyers agreed to file a lawsuit simply does not state a colorable constitutional claim.

Moreover, with respect to Defendant Hludzik, the Plaintiffs' claims are particularly wanting. As to this Defendant, the Plaintiffs simply speculate that attorney Hludzik, who once represented the Maynards on unrelated matters, might have disclosed the existence of a financial settlement in favor of the Maynards, a settlement which the Plaintiffs further speculate may have inspired other lawyers to separately pursue litigation of this real estate tax reassessment. Thus, there is no assertion that Attorney Hludzik played any decision-making role in this litigation process, was actively engaged in this litigation, or participated in any other way in a conspiracy to deprive the Plaintiffs of any civil rights. These spare assertions, by themselves, are insufficient to allege a conspiracy in violation of 42 U.S.C. §1985(3). Moreover, the alleged actions of this private attorney do not, as a matter of law, rise to the level of state action triggering liability under 42 U.S.C. §1983. Henderson v. Fisher, 631 F.2d 1115, 1119 (3d Cir. 1980).Therefore, Count 18 of the amended complaint also fails as a legal matter.

### D.    The Court Should Not Exercise Ancillary Jurisdiction Over Any State Law Claims

The dismissal of these federal constitutional claims, in turn, dictates the appropriate course for this Court to follow in addressing any ancillary state law claims that the Maynards may wish to pursue against these Defendants. In a case such as this, where the jurisdiction of the federal court was premised on an alleged federal civil

rights violations which are found not to state a cause of action upon which relief can

be granted, the Court has observed that the proper course is for:

> [T]he court [to] decline to exercise supplemental jurisdiction over the plaintiff's state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-... the district court has dismissed all claims over which it has original jurisdiction."); United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (holding that when federal causes of action are dismissed, federal courts should not separately entertain pendent state claims).

Bronson v. White, No. 05-2150, 2007 WL 3033865, at *13 (M.D.Pa. Oct. 15,

2007)(dismissing ancillary malpractice claim against dentist).

This course of action, dismissing ancillary state claims when a plaintiff's federal

constitutional claims fail as an matter of law, has also been expressly endorsed by the

United States Court of Appeals for the Third Circuit in Ham v. Greer, 269 F. App'x

149, 151 (3d Cir. 2008). In Ham, the appellate court approved this practice, stating in

terms that are equally applicable here that:

> Because the District Court appropriately dismissed [the plaintiff's] Bivens claims, no independent basis for federal jurisdiction remains. In addition, the District Court did not abuse its discretion in declining to address the state law negligence claims. 28 U.S.C. § 1367(c)(3); see United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Tully v. Mott Supermkts., Inc., 540 F.2d 187, 196 (3d Cir.1976).

Id. at 151.

**E.** **In Any Event, Many of These State Law Claims Fail As A Matter of Law**

While this Court may entirely forego any analysis of the Plaintiffs' state law claims in light of the dismissal of the federal claims advanced by the Plaintiffs, <u>see</u> section D, above, we note that many of the Plaintiffs' state law claims may also be legally flawed and, therefore, subject to dismissal on their merits.

For example, to the extent that the Plaintiffs seek damages under the Pennsylvania constitution, (Doc. 48, Count 17), it must be noted that:

> Pennsylvania law does not include a statutory equivalent to 42 U.S.C. § 1983, which provides a cause of action for damages because of a federal constitutional violation. Moreover, the question of whether the Pennsylvania Constitution provides a cause of action for damages remains unanswered. <u>Underwood v. Beaver Cnty. C.Y.S.</u>, Civ. A. No. 03-1475, 2005 U.S. Dist. LEXIS 23012, at *7 (W.D.Pa. Oct. 7, 2005). Nevertheless, a majority of other district courts in this circuit that have decided the issue have concluded that money damages are not available for claims under the Pennsylvania Constitution .<u>See</u> <u>Ryan v. General Machine Prods., 227</u> F.Supp.2d 585, 595 (E.D.Pa.2003) (stating that federal courts in the Court of Appeals for the Third Circuit have concluded that there is no right to money damages under the Pennsylvania Constitution); <u>see also Douris v. Schweiker</u>, 229 F.Supp.2d 391, 405 (E.D.Pa.2002); <u>Lees v. West Greene Sch. Dist.,</u> 632 F.Supp. 1327, 1335 (W.D.Pa.1986). Although monetary relief is unavailable, "other remedies, such as declaratory or injunctive relief ... are ... remedies under the Pennsylvania Constitution." <u>Jones v. City of Philadelphia</u>, 890 A.2d 1188, 1215-16 (Pa.Commw.Ct.2006) (discussing the lack of a cause of action for damages under the Pennsylvania Constitution and declining, "without benefit of legislative action," to create such a cause of action.).

<u>O'Hara v. Hanley</u>, No. 08-1393, 2009 WL 2043490, 9 (W.D.Pa. July 8, 2009).

Thus, the state constitution simply may not provide legal footing for any damages claims like those made by the Plaintiffs in this case.

Similarly, Pennsylvania's racketeering statute, 18 Pa.C.S. § 911 does not appear to provide for a private cause of action for damages. Indeed, as the Court has aptly observed: "Although the Pennsylvania Corrupt Organizations Act, 18 Pa.C.S.A. § 911 bears a resemblance to federal RICO, the act does not on its face appear to create a private cause of action for money damages as RICO does." D'Iorio v. Adonizio 554 F.Supp. 222, 232 (M.D.Pa. 1982). Therefore, these state law damages claims based upon 18 Pa.C.S. §911 also fail as a matter of law.

Finally, the Plaintiffs' state law abuse-of-process claims (Doc. 48, Counts 21 and 22) also appear to suffer from fundamental legal defects. With respect to these state law claims, it is well-settled that:

> Under Pennsylvania law, "[t]he gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it[.]" McGee v. Feege, 535 A.2d 1020, 1023, 517 Pa. 247, 253 (Pa.1987) ( quoting Publix Drug Co. v. Breyer Ice Cream Co., 32 A.2d 413, 415, 347 Pa. 346, 349-50 (Pa.1943)). Among other prerequisites, a claim for abuse of process requires a plaintiff to establish that the defendant used a legal process against the plaintiff primarily to accomplish a purpose for which the process was not designed. Hart v. O'Malley, 436 Pa.Super. 151, 647 A.2d 542, 551 (Pa.Super.Ct.1994); Rosen v. American Bank of Rolla, 426 Pa.Super. 376, 627 A.2d 190, 192 (Pa.Super.Ct.1993). To satisfy the "perversion of process" element, the plaintiff must show "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process." Id. at 170-71, 627 A.2d 190 (quoting Shaffer v. Stewart, 326 Pa.Super. 135, 473 A.2d 1017, 1019 (Pa.Super.Ct.1984)). Furthermore, "there is no

liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." Id. As the Third Circuit Court of Appeals noted, "the point of liability is reached when 'the utilization of the procedure for the purpose for which it was designed becomes so lacking in justification as to lose its legitimate function as a reasonably justifiable litigation procedure .' " Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 308 (3d Cir.2003). . . . Thus, wide latitude is given to those who turn to legal processes as a means to accomplish a host of results.

Taliaferro v. Darby Tp. Zoning Bd, supra, 2008 WL 2078992, *8. Therefore, since the " tort of 'abuse of process' is defined as the use of a legal process against another 'primarily to accomplish a purpose for which it is not designed' [in order to] establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff.' Shiner v. Moriarty, 706 A.2d 1228, 1236 (Pa.Super.1998) (citations omitted)." O'Hara v. Hanley, supra, 2009 WL 2043490, at *11.

In short, in order to state a valid state claim for abuse-of-process under Pennsylvania law the plaintiffs must allege facts that show that the legal process was used "primarily to accomplish a purpose for which the process was not designed." Id. Put another way, the gravamen of this state law tort is "use [of] legal process as a 'tactical weapon to coerce a desired result that is not the legitimate object of the process.' Gen. Refractories v. Fireman's Fund Ins., 337 F.3d 297 (3d Cir.2003

(quoting McGee v. Feege, 517 Pa. 247, 535 A.2d 1020, 1026 (Pa.1987))." O'Hara v. Hanley, supra, 2009 WL 2043490, at *12.

Construed in this way, the state tort of abuse -of-process requires a showing that is similar to the proof that is necessary to defeat Noerr-Pennington immunity under the "sham" litigation exception. In each instance the plaintiff is required to plead facts which show that the litigation was not designed to accomplish its stated goal, obtaining a favorable legal outcome, but rather was intended and perverted to some other goal, solely to harass.

In this case the Plaintiffs simply have not pleaded facts which would permit such a finding. Quite the contrary, the well-pleaded facts asserted by the Plaintiffs in this case show, beyond dispute, that the Defendants were actually trying to achieve the results they sought in their litigation when they brought this action challenging the Plaintiffs' real estate re-assessment. The Defendants genuinely intended to secure a revised tax assessment which placed a greater tax liability on the Plaintiffs. Indeed, Count 16 of the Plaintiffs' amended complaint, which alleges that the Defendants endeavored to deprive the Maynards of this favorable real estate assessment, is expressly premised upon the notion that the Defendants were sincerely committed to achieving the goals of this litigation. Since the state tort of abuse -of- process requires a plaintiff to establish that the defendant used the legal process against the plaintiff primarily to accomplish a purpose for which the process was not designed, Hart v.

33

O'Malley, 436 Pa.Super. 151, 647 A.2d 542, 551 (Pa.Super.Ct.1994), this concession by the plaintiffs that the defendants' goal was a favorable outcome in this litigation is fatal to any effort to characterize the litigation as an abuse of process, and compels dismissal of this claim on its merits.

## IV.    Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Defendants' motions to dismiss the amended complaint (Docs. 59, 74 and 78) be GRANTED and Counts 16 through 22 of the Plaintiffs' amended complaint should be dismissed with prejudice.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

_**S/Martin C.  Carlson**_
Martin C. Carlson
United States Magistrate Judge

Dated: November 8, 2010